## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KONE INC.
6901 Muirkirk Meadows Drive
Beltsville, MD 20705,

      Plaintiff,

v.

CHENEGA WORLDWIDE SUPPORT, LLC
3000 C Street, Suite 301
Anchorage, AK 99503,

      Defendant.

Case No. _____

## COMPLAINT

Plaintiff KONE Inc. ("KONE"), by its counsel, Ansa Assuncao LLP, files this Complaint against Defendant Chenega Worldwide Support, LLC ("Chenega").

## NATURE OF THE ACTION

1.    This matter arises out of a construction and modernization project for the General Services Administration ("GSA") headquarters building located at 1800 F Street, Northwest, Washington, D.C. ("the GSA project").  Chenega is the general contractor for the GSA project.

2.    Chenega subcontracted with KONE to provide elevator modernization services for the GSA project ("the subcontract").  Due to Chenega's failure to provide safe conditions, including to abate hazardous materials at the site, KONE was obliged to cease operations on the project.  Chenega terminated KONE for its refusal to place its workers and others in harms' way.

3.    Despite KONE providing notice to Chenega and making demand for payment, there remains due and owing to KONE under the subcontract and for its work on the project $908,007.76.  KONE brings this action for breach of contract, quantum meruit, and account stated.

1

## PARTIES

4.     KONE is (and was at all relevant times) a Delaware corporation that is registered to do business in the District of Columbia.  KONE's principal place of business is (and was at all relevant times) in Lisle, Illinois.  KONE's Washington, D.C. branch office is located in Maryland.

5.     Chenega is (and was at all relevant times) an Alaska limited liability company.  At all relevant times, Chenega maintained its principal place of business in Anchorage, Alaska.  Upon information and belief, Chenega is not registered to do business in the District of Columbia.

6.     As the general contractor for the GSA project, Chenega performed and transacted business in the District of Columbia for a property and project physically located in the District.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject of this matter pursuant to 28 U.S.C. § 1332.  The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.  KONE is a citizen of Delaware and Illinois.  Chenega is a citizen of Alaska.  Accordingly, there is complete diversity of citizenship.

8.     This Court has personal jurisdiction over Chenega pursuant to the District of Columbia Long-Arm Statute, D.C. Code § 13-423(a), and under the Due Process Clause, because KONE's claim for relief arises from Chenega's: (1) transacting business in the District of Columbia as general contractor for the GSA project, involving a property located in the District of Columbia; and (2) contracting to supply general contractor services in the District of Columbia, along with its contracting to obtain elevator modernization services from KONE in the District.

9.     Venue is properly placed in this, the United States District Court for the District of Columbia, pursuant to 28 U.S.C. § 1391(b)(2).  The events and omissions giving rise to KONE's

claim occurred in the District of Columbia.  The property that is the subject of the subcontract, and at which KONE was contracted to provide services, is located in the District of Columbia.

10.     This matter is properly adjudicated through this litigation.  The subcontract's alternative dispute resolution provisions do not apply, by their plain terms, to: (1) "any claim, action, suit or proceeding seeking specific enforcement of the provisions" of the subcontract; or (2) "a Party's pursuit of recovery of undisputed payments due and owing under" the subcontract.

## FACTUAL ALLEGATIONS

11.     Chenega and GSA entered into a Prime Contract, pursuant to which Chenega would serve as the general contractor for the modernization of GSA's Washington, DC headquarters.

12.     On or about September 20, 2018, KONE entered a written subcontract with Chenega, pursuant to which KONE would provide elevator modernization services for the GSA project in exchange for prompt payment from Chenega, to be paid net 30 days from invoicing.

13.     The subcontract, a firm-fixed price contract, contained a $2,349,005 payment ceiling, which covered the subcontract base price plus all options available to the parties.

14.     Consistent with KONE's goal of providing a safe workspace for its personnel and other workers and ensuring public safety, the subcontract contains important safety provisions.

15.     The subcontract states:

> 27.17.  Safety.  Notwithstanding anything to the contrary, if in Subcontractor's sole judgment the equipment presents a safety hazard to the riding public or the Subcontractor's technicians (including but not limited to Client or Prime Contractor's act of creating or allowing unsafe practices or conditions or Prime Contractor's failure to authorize necessary repairs or upgrades), Subcontractor will inform Prime Contractor and Client of the hazardous conditions and request the problem be rectified.  If not rectified within a reasonable amount of time, Subcontract[or] may terminate this Agreement in its entirety upon written notice.

16.     The subcontract states:

> 27.18.     Concealed Conditions.     If during its Work,
> Subcontractor encounters conditions at the site that are
> subsurface, differ materially from what is represented in the
> contract documents, or otherwise concealed physical
> conditions, Subcontractor will be entitled to an extension of
> time and additional costs for the performance of its Work ….

17.     The subcontract further states:

> 27.19.  Hazardous Materials.  Notwithstanding anything to the
> contrary, Subcontractor's Work does not include any
> abatement or disturbance of asbestos containing material
> ("ACM"), presumed asbestos containing materials
> ("PACM"), or other hazardous materials (i.e. lead, PCBs)
> (collectively "HazMat").  Subcontractor has the right to
> discontinue its Work in any location where suspected HazMat
> is encountered or disturbed.  Hazmat removal or abatement is
> at Prime Contractor and/or the Client's sole expense.

18.     In or around February 2019, before KONE was to begin work on the project, KONE
was made aware of the existence of lead paint, a hazardous material, in the elevator machine room.

19.     Pursuant to the subcontract, KONE requested that Chenega coordinate removal of
the lead paint in the elevator machine room and advise KONE when removal was complete.

20.     In the following weeks, KONE learned there was lead paint in other areas of the
project site where KONE personnel would be required to work, including in the elevator pit and
hoistway for Elevators 3 and 4, as well as the previously identified elevator machine room.

21.     By letter dated March 12, 2019, KONE again notified Chenega of the dangerous
and unforeseeable conditions encountered at the job site and advised that it would not perform any
work within the pit, hoistway, or machine room while the dangerous condition remained.

22.     In its March 12, 2019 letter, KONE informed Chenega that the work required to
address these conditions was outside the scope of KONE's subcontract and requested an extension

of time to complete its work (which could not safely begin until the conditions were abated), an equitable increase in the subcontract price, and compensation for related impact costs.

23.     On March 15, 2019, Chenega responded to KONE's letter, asserting (despite express subcontract language to the contrary) that: (1) KONE was responsible for all work activities in elevator hoistways and pits; (2) lead paint in the hoistway and pit does not delay or prevent KONE from performing work activities; (3) Chenega has no obligation to abate hazardous materials on the job site; and (4) even if it did, Chenega mitigated exposure to KONE employees by covering a wall covered in lead-based paint with a plastic sheet and water-resistant board.

24.     In April 2019, Chenega transmitted to KONE an initial lead exposure assessment performed at the GSA project site by Advantage Environmental Consultants, LLC ("AEC").

25.     The AEC assessment found lead present in the air in KONE's project workspaces.

26.     On April 18, 2019, KONE again wrote to Chenega to advise that the lead concern for the Elevator 3 and 4 hoistway and elevator machine room had not been resolved.  KONE stated that the AEC-confirmed presence of lead in the air did not comply with the parties' subcontract.

27.     KONE explained that, even if KONE personnel were to work in unabated project areas using personal protective equipment ("PPE"), the unabated lead would still pose a risk because KONE's work could result in release of pollutants from lead-based paint and exposure of KONE personnel, other contractors working on the project, and the general public and other building users or occupants (including a daycare center located in the building) to those toxins.

28.     KONE reminded Chenega that its subcontract scope of work does not include abatement or disturbance of lead-containing material for the safety of KONE's employees, other workers (including other subcontractors), and the general public.  That duty is Chenega's.

29.     KONE again requested that Chenega abate the lead in KONE's workspaces.  KONE stated that, if Chenega failed to do so, KONE would be forced to reallocate its manpower and would assume no liability for delay caused by Chenega's failure to comply with the subcontract.

30.     On May 10, 2019, KONE served Chenega with a suspension of work notice.

31.     In its notice, KONE informed Chenega that KONE was, as of that date, suspending all work by KONE personnel at the GSA job site pursuant to Article 27.19 of the subcontract.

32.     KONE reminded Chenega that it had notified Chenega of the dangerous condition posed by lead paint at the job site on at least four occasions, dating as far back as January 2019.

33.     Nevertheless, by May 2019, Chenega still had not abated the hazardous condition.

34.     Rather than abate the hazardous condition as required by the subcontract, Chenega claimed it did not exist: Chenega personnel stated on the job site that there was no lead paint.

35.     KONE submitted to Chenega with its May 10, 2019 correspondence a letter KONE received from Local No. 10 of the International Union of Elevator Constructors ("IUEC").

36.     KONE elevator mechanics are unionized through, and members of, the IUEC.

37.     Chenega's statements that there was no lead caused a KONE mechanic to challenge that position by submitting a paint sample from the Elevator 3 and 4 hoistway to the union.

38.     The IUEC's testing of that paint sample was positive for lead.

39.     The IUEC directed its members not to return to the GSA job site unless and until the lead paint was fully abated in areas where KONE mechanics would be designated to work.

40.     KONE reported this information to Chenega in its May 10, 2019 letter.

41.     KONE demanded Chenega deliver a lead paint abatement plan, including a completion schedule, and informed Chenega that it would resume work once the lead paint was fully abated.  KONE reserved all rights to claim extensions of time and additional compensation.

42.     May 22, 2019 testing conducted by AEC confirmed the presence of lead-based paint in the elevator machine room and on the walls of the Elevator 3 and 4 hoistway and shaft.

43.     AEC's May 22, 2019 testing also stated an asbestos pipe had been concealed using drywall on the right wall of the Elevator 3 and 4 shaft at or near the sixth-floor level.  In fact, concealing drywall started from several feet from the pit floor and ran up the wall of the hoistway.

44.     By letter dated May 31, 2019, KONE provided a proposed change order and acceleration schedule for elevator modernization to Chenega, but advised that, to meet the proposed schedule, all hazardous materials would need to be abated by June 17, 2019.

45.     Chenega failed to ensure all hazardous materials were abated by June 17, 2019.

46.     In or around the summer of 2019, Chenega did contract with AEC to perform some limited abatement work in the Elevator 3 and 4 hoistway and pit and elevator machine room.

47.     However, despite its contractual obligations for full abatement, what Chenega contracted with AEC to do was only spot abatement of lead in certain pre-marked areas below the Department of Energy & Environment ("DOEE") standard of 40 micrograms per square foot.

48.     As Chenega was aware, the parties' contract required full abatement.

49.     On September 3, 2019, KONE encountered new suspected hazardous material while performing demolition on the job site in preparation for work on Elevators 11 and 12.

50.     Given the presence of this material, KONE removed its crews from the jobsite.

51.     Chenega was aware, from communications and the parties' contract, that KONE would suspend work in affected areas until it received written confirmation that abatement of all hazardous materials had been completed and it was safe for KONE workers and others to return, meaning that there were no detectable levels of hazardous materials in the affected areas.

52.     Through communications and a proposed change order, KONE reminded Chenega that abatement of dangerous site conditions must occur before KONE would continue work. KONE reminded Chenega that KONE is not responsible for abatement under the subcontract.

53.     In one letter dated September 18, 2019, KONE informed Chenega that, despite KONE's repeated requests for Chenega to fully abate lead-based paint and asbestos, such hazardous materials persist at the jobsite, preventing KONE from working in affected areas.

54.     KONE informed Chenega that its failure to abate these hazardous materials violates the terms of the parties' subcontract and is causing delays to completion of the GSA project.

55.     In another letter also dated September 18, 2019, KONE advised Chenega that, despite KONE's repeated requests, no plan for full abatement of lead paint and other hazardous materials had been provided.  Accordingly, KONE advised, its request for full abatement of lead in forty-five (45) pre-marked areas remained outstanding, in violation of the subcontract.

56.     KONE further advised Chenega that flaking paint remains in the Elevator 3 and 4 shaft.  KONE again requested stabilization of any loose or flaking paint in the elevator shaft.

57.     KONE advised Chenega it would continue with work at the GSA jobsite when its abatement requests were fully satisfied.  KONE again reminded Chenega that, without abatement of lead-containing materials, harmful pollutants could be released into the air during KONE's work, thereby exposing KONE mechanics, others working on the project, and the general public.

58.     During a September 26, 2019 meeting between KONE and Chenega personnel, KONE raised concerns about potential asbestos in elevator walls.  KONE informed Chenega that additional work suspension might occur based on the discovery of actual or suspected asbestos.

59.     Unfortunately, KONE's concerns were realized.  On October 3, 2019, a KONE employee observed wall conditions in the shafts, which were ultimately found to contain asbestos.

60.     Yet again, Chenega's obligation to completely abate was left unsatisfied.

61.     Chenega did not ensure complete abatement despite KONE's significant good faith cooperation and communication.  KONE's good faith efforts to work with Chenega to facilitate abatement and return to work included the many communications outlined above, but also breaking up elevator teams (at significant cost and inefficiency to KONE) to provide an operator to move elevators as necessary to allow for abatement in elevator hoistways, shafts, and pits.

62.     Despite KONE's good faith efforts, all aimed at protecting its personnel, other workers and the general public, Chenega did not fully abate hazardous materials at the jobsite.

63.     Instead, on October 10, 2019, Chenega terminated its subcontract with KONE.

64.     As of that date, lead abatement was still occurring in at least one elevator hoistway. That ongoing abatement work left KONE unable to safely perform at the GSA jobsite.

65.     When Chenega terminated its subcontract with KONE on October 10, 2019, Chenega volunteered to process payment to KONE for elevator equipment and other materials.

66.     By letter dated October 15, 2019, KONE acknowledged receipt of Chenega's termination letter, disputed positions stated by Chenega therein, and advised Chenega of KONE's intent to submit a complete demand for payment of all sums owed to KONE for its project work.

67.     Chenega never responded to KONE's October 15, 2019 letter.

68.     On November 5, 2019, KONE again wrote to Chenega.  In its letter, KONE demanded payment in the amount of $908,007.76 for costs incurred by KONE on the GSA project. KONE provided a breakdown of the amounts it was owed, along with supportive documentation.

69.     Chenega never responded to KONE's November 5, 2019 letter.

70. Chenega did not dispute the figures or documents KONE provided supporting the outstanding amount remaining owed to KONE; nor did Chenega dispute that KONE was owed monies for the work it completed at the project, under the subcontract, and at Chenega's direction.

71. To date, the balance of $908,007.76 remains due and owing to KONE.

72. The $908,007.76 owed to KONE includes engineering costs for four elevators, materials for two elevators, retainage, change orders for work Chenega directed KONE to perform, dumpster and container storage directed by Chenega, and costs associated with a swing panel.

73. KONE also incurred costs in storing material for Elevators 11 and 12 not included in the $908,007.76 figure. Storage costs accrued monthly and have increased over time.

74. Despite KONE's repeated good faith attempts to secure payment, Chenega has failed to pay the outstanding balance due and owing to KONE under the subcontract.

## COUNT I—BREACH OF CONTRACT

75. KONE repeats and re-alleges each of the allegations contained in Paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth at length herein.

76. KONE and Chenega entered into a valid and enforceable subcontract.

77. Under the subcontract, Chenega was required to make payment to KONE for work KONE performed and materials it supplied at Chenega's direction within 30 days from invoicing.

78. Under the subcontract, Chenega was required to rectify hazardous conditions, including hazardous materials, at the project jobsite within a reasonable amount of time.

79. Under the subcontract, KONE's work did not and could not include abatement or disturbance of hazardous materials, including material containing lead and/or asbestos.

80. Under the subcontract, removal and/or abatement of hazardous material was the sole responsibility of Chenega, as general contractor, or the GSA, as the project owner.

81.     Under the subcontract, KONE was entitled to extensions of time and additional costs for the performance of its work if concealed dangerous conditions were revealed.

82.     Under the subcontract, KONE had the right to discontinue its work in any location at the jobsite were hazardous materials were encountered or would be disturbed by KONE's work.

83.     Chenega breached its duties under the subcontract by:

> (1)     Failing to pay KONE, despite demand, the entire amount due and owing for work that KONE performed and materials and equipment KONE supplied for the project, under the subcontract, and at Chenega's direction;

> (2)     Failing to rectify hazardous conditions at the job site in a reasonable time, thereby preventing KONE from safely performing the contracted-for work;

> (3)     Failing to fully and completely abate hazardous materials at the site, to the safety risk of KONE personnel, other workers, and the general public; and

> (4)     Failing to provide KONE contracted-for extensions of time and additional costs necessitated by the discovery of hazardous conditions at the jobsite and, instead, unilaterally terminating KONE's subcontract in bad faith.

84.     As a direct and proximate result of Chenega's breaches, KONE has suffered damages in the amount of $908,007.76, the amount remaining due and owing to KONE under the subcontract for work, materials, and equipment supplied, as well as for the cost of equipment storage, which Chenega has failed to pay to KONE despite KONE's repeated demands.

**WHEREFORE**, KONE respectfully requests that judgment be entered in its favor and against Chenega in the amount of $908,007.76, plus the cost of equipment storage, which has yet to be fully realized, representing the balance due and owing to KONE under the subcontract, plus

pre- and post-judgment interest, the costs of this action, reasonable attorneys' fees incurred, and any other such relief that the Court may deem just and proper in the circumstances presented.

## COUNT II—QUANTUM MERUIT

85.     KONE repeats and re-alleges each of the allegations contained in Paragraphs 1 through 84 of this Complaint with the same force and effect as if fully set forth at length herein.

86.     By performing elevator modernization work, performing elevator engineering, supplying elevator material, providing operators to run elevator equipment to facilitate abatement activities, and supplying containers and dumpsters, KONE conferred a benefit on Chenega.

87.     Chenega knew, appreciated, and understood KONE was conferring a benefit.

88.     Indeed, Chenega contracted with KONE for these very services and materials.

89.     Chenega directed KONE to provide elevator operators and perform other services.

90.     Chenega has accepted and retained benefits KONE has conferred without tendering full payment to KONE.  It has been five months since KONE's November 5, 2019 letter formally demanding Chenega tender payment of the more than $900,000.00 presently owed to KONE.

91.     The circumstances make it inequitable for Chenega to retain the benefits KONE provided without paying KONE for its full value, leading to unjust enrichment by Chenega.

**WHEREFORE**, KONE respectfully requests that judgment be entered in its favor and against Chenega in the amount of $908,007.76, plus the cost of equipment storage, which has yet to be fully realized, representing the balance owed to KONE under the subcontract and the amount necessary to fully compensate KONE for the full value of the benefits it conferred to Chenega, plus pre- and post-judgment interest, the costs of this action, reasonable attorneys' fees incurred, and any other such relief that the Court may deem just and proper in the circumstances presented.

## **COUNT III—ACCOUNT STATED**

92.    KONE repeats and re-alleges each of the allegations contained in Paragraphs 1 through 91 of this Complaint with the same force and effect as if fully set forth at length herein.

93.    KONE and Chenega became involved in a transaction that gave rise to Chenega's indebtedness to KONE when they entered into a contract pursuant to which KONE would provide elevator modernization materials, labor, and services in exchange for payment from Chenega.

94.    Through invoicing and correspondences sent to Chenega in or around November 2019 and earlier, KONE provided a rendition of an account and recited to Chenega the amount of the existing debt owed by Chenega to KONE ($908,007.76, plus the cost of equipment storage).

95.    In the months since KONE provided its last statement of account (on November 5, 2019), Chenega has not responded to KONE's letter or disputed the documents provided.

96.    The account is thus presumed to be settled via Chenega's implied admission.

97.    For a long time and without objection, Chenega has retained KONE's stated account, which KONE presented in writing, with supportive documentation, and which shows a balance owed by Chenega to KONE.  In these circumstances, Chenega's failure to object to the correctness of the stated sum owed to KONE by Chenega (and its failure to present any alternative accounting of what amount Chenega may claim is properly due) is viewed as an admission by Chenega that the amount stated is owed by Chenega to KONE and constitutes a preexisting debt.

98.    As a direct, proximate, and foreseeable result of the foregoing events, Chenega became indebted to KONE for the account stated and never denied by Chenega on the amount due and owing to KONE under the subcontract ($908,007.76, plus the cost of equipment storage).

**WHEREFORE**, KONE respectfully requests that judgment be entered in its favor and against Chenega in the amount of the account stated—$908,007.76, plus the cost of equipment

storage—and for such further and other relief that the Court deems just and proper, including (but not limited to) interest and the costs and fees of this suit, including attorneys' fees incurred.

Respectfully submitted,

/s/ Arthur F. Fergenson
Arthur F. Fergenson, Esq.
Bar/Court ID No. 200840
ANSA ASSUNCAO LLP
5850 Waterloo Road, Suite 140
Columbia, Maryland 21045
Phone: (410) 370-1139
Fax: (410) 539-7081
Arthur.Fergenson@ansalaw.com

*Attorney of Record for KONE Inc.*