UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KONE INC.,

      *Plaintiff*,

  v.

CHENEGA WORLDWIDE SUPPORT, LLC,

      *Defendant*.

No. 20-cv-999 (DLF)

**MEMORANDUM OPINION**

KONE Inc. ("KONE") brings this action against Chenega Worldwide Support, LLC ("Chenega") for breach of contract and other claims related to a large construction project in the Washington, D.C. area. Before the Court is Chenega's Motion for Summary Judgment and to Compel Arbitration, or in the alternative, Motion to Dismiss for Lack of Subject Matter Jurisdiction, Dkt. 7. For the reasons that follow, the Court will grant Chenega's motion in part and stay the case pending arbitration.

**I.   BACKGROUND**

KONE is a construction company incorporated in Delaware with its principal place of business in Illinois. Compl. ¶ 4, Dkt. 1. Chenega is an Alaska-based limited liability company and the general contractor leading the renovation of the General Services Administration's ("GSA") headquarters in Washington, D.C. *Id.* ¶¶ 1, 5–6. In September 2018, KONE entered into a subcontract ("Agreement") with Chenega to provide elevator modernization services for the GSA project. *Id.* ¶ 2; Pl.'s Counter-Statement of Material Facts ("PCSMF") ¶ 2, Dkt. 8-1.

In the subsequent months, the business relationship between KONE and Chenega soured over disputes related to what KONE characterizes as a "failure to abate . . . hazardous materials." Compl. ¶¶ 54–55. According to KONE, its repeated requests that Chenega take steps to remove hazardous materials, including lead and asbestos, from the project site either went unanswered or were inadequately addressed. *Id.* ¶¶ 18–23, 26, 34, 53. On account of these hazards, KONE requested "an extension of time to complete its work . . . , an equitable increase in the subcontract price, and compensation for related impact costs." *Id.* ¶ 22. When the parties were unable to agree on a path forward, KONE eventually ceased work on the project, *id.* ¶¶ 30, 51, PCSMF ¶ 12, and Chenega terminated the Agreement, Compl. ¶ 63. Based on claims for breach of contract, quantum meruit, and account stated, KONE now seeks to recover $908,007.76 that it claims it is owed for elevator equipment and other materials, as well as other costs incurred by KONE on the GSA project. *See id.* ¶¶ 70–74, 84, 91, 98. KONE also seeks an unstated amount of damages "not included in the $908,007.76 figure" for "storing material for Elevators," *id.* ¶ 73, pre- and post-judgment interest, and attorneys' fees, *id.* ¶ 84.

Article 20.1 of the parties' Agreement provides that "any dispute or controversy between the Parties arising under or in connection with this Agreement" will be reviewed by an arbitrator "in accordance with the Commercial Rules of the American Arbitration Association then in effect."[1] Dkt. 7-2 at 17. The article also includes three carve-out provisions. The first two

---

[1] Article 20.1's relevant clauses read:

> Except as otherwise expressly provided, the Parties agree that any dispute or controversy between the Parties arising under or in connection with this Agreement ("Dispute") will be settled exclusively in accordance with the procedures set forth in this Article. The Parties agree that the procedures set forth in this Article shall not be applicable to disputes or controversies arising in connection with third-party claims against one or both of the Parties to this Agreement, or to any, claim, action, suit or proceeding seeking specific enforcement of the provisions of this Agreement. This Article shall also not

2

exempt from "the [arbitration] procedures set forth" in the article those "disputes or controversies arising in connection with third-party claims" and "any claim, action, suit or proceeding seeking specific enforcement." *Id.*  In addition, the Agreement provides that the "Article shall also not apply to a Party's pursuit of recovery of undisputed payments due and owing under this Agreement." *Id.*  This last exception forms the basis of the parties' arguments in this case.

## II.     LEGAL STANDARDS

### A.     Motion for Summary Judgment

A court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an

---

apply to a Party's pursuit of recovery of undisputed payments due and owing under this Agreement.

. . .

Except as otherwise modified in this Article, the Arbitrator will review the Dispute in accordance with the Commercial Rules of the American Arbitration Association then in effect. The Arbitrator will decide all procedural and substantive issues relating to the Dispute. . . .

Dkt. 7-2 at 17.

element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 F.3d at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In deciding a motion to compel arbitration, the court applies "'the same standard [of review] used in resolving summary judgment motions' pursuant to Federal Rule of Civil Procedure 56(c), 'as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'" *Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126, 129 (D.D.C. 2013) (quoting *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008)). "The party seeking to compel arbitration must present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Id.* (internal quotation marks omitted). "The burden then shifts to plaintiffs to show that there is a genuine issue of material fact as to the making of the agreement." *Id.* "The Court will compel arbitration if the pleadings and the evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks omitted).

### B.     Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal law empowers federal district courts to hear only certain kinds of cases, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 377 (1994). When deciding a Rule 12(b)(1) motion, the court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine [the] jurisdictional questions." *Am. Nat. Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir.

4

2011) (internal quotation marks omitted). But the court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" in order to "assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

## III.   ANALYSIS

The parties disagree over whether the Agreement delegates the threshold question of arbitrability to the arbitrator, and if so, whether KONE's specific claims are covered by an exemption from that delegation. Def.'s Mot. for Summ. J. at 5, 15–17; Pl.'s Opp'n at 2, 7–12, Dkt. 8. The Court will compel arbitration because there is clear and unmistakable evidence that the parties delegated the question of arbitrability to the arbitrator, and the Agreement's carve-out provisions do not limit the scope of that delegation.

### A.   The Question of Arbitrability

"Arbitration agreements relating to interstate commerce, regardless of whether the challenge is brought in state or federal court, are governed by the [Federal Arbitration Act]." *Haire*, 925 F. Supp. 2d at 130 (first citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) and then citing *Buckeye Check Cashing, Inc. v. Cardegna*, 56 U.S. 440, 447–48 (2006)). The "central purpose of the Federal Arbitration Act [is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54–55 (1995) (internal quotation marks omitted). As a result, "[a]ny doubts regarding the

scope of arbitrable issues should be resolved in favor of arbitration." *Haire*, 925 F. Supp. 2d at 130 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

This case raises the threshold question of "who has the primary power to decide arbitrability." *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). As a general matter, "the question of arbitrability—whether a [particular] agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *Tower Ins. Co. of N.Y. v. Davis/Gilford*, 967 F. Supp. 2d 72, 78 (D.D.C. 2013) (alteration in original) (quoting *AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 649 (1986)). But parties may include in their agreement a delegation provision that gives the arbitrator the authority to determine arbitrability. Any such provision is "simply an additional, antecedent agreement" about who should decide the gateway question of arbitrability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S 63, 70 (2010). If there is "clear and unmistakable evidence" that the parties agreed to have an arbitrator decide this threshold question, *see First Options*, 514 U.S. at 944 (cleaned up), the Federal Arbitration Act "operates on this additional arbitration agreement just as it does on any other," *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center*, 561 U.S. at 70).

Here, the parties agree that the Agreement is enforceable and includes an arbitration provision that applies to certain disputes arising under it. *See* Pl.'s Opp'n at 2–3; Def.'s Mot. for Summ. J. at 12–13. But they disagree over *who* decides—a court or an arbitrator—the threshold issue in this case: whether KONE's claim is one made in "pursuit of recovery of undisputed payments due and owing under [the] Agreement" such that it falls outside the scope of the arbitration agreement. *See* Def.'s Mot. for Summ. J. at 15–17; Pl.'s Opp'n at 7–12.

6

1.      *The Agreement's Incorporation of AAA Rules*

The plain language of the Agreement reveals the parties' clear and unmistakable intent to delegate the threshold issue of arbitrability to the arbitrator.  Article 20.1 incorporates the Commercial Rules of the American Arbitration Association ("AAA rules"), and it clarifies that the arbitrator has broad authority to decide "all procedural and substantive issues."  *See* Dkt. 7-2 at 17.  Together, these provisions reveal that the parties intended to delegate all questions of arbitrability to the arbitrator.

Paragraph four of Article 20.1 incorporates the AAA rules.  It provides: "Except as otherwise modified in this Article, the Arbitrator will review the Dispute in accordance with the [AAA rules] then in effect."  *Id.*  Rule 7 of the AAA rules expressly delegates to the arbitrator the power to decide the question of arbitrability:

> R-7. Jurisdiction
>
> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

AAA Rules R-7(a).[2]

To date, twelve circuits, including the D.C. Circuit, have held that the incorporation of standard rules of arbitration that delegate arbitrability determinations to the arbitrator is "clear and unmistakable" evidence that the parties intend for an arbitrator, rather than a court, to determine whether a particular grievance is subject to arbitration.  *See, e.g.*, *Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 207–08 (D.C. Cir. 2015) (incorporating the United Nations Commission on International Trade Law Rules ("UNCITRAL")); *see also Blanton v. Domino's*

---

[2] *Commercial Arbitration Rules and Mediation Procedures*, Am. Arb. Ass'n (Oct. 1, 2013), https://www.adr.org/sites/default/files/CommercialRules-Web.pdf.

7

*Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020) (discussing cases incorporating the AAA rules); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283–84 (10th Cir. 2017) (collecting cases). The fact that the parties incorporated the AAA rules in their entirety, rather than the "specific" arbitrability provision of the AAA rules, *see* Pl. Opp'n at 11, does not undermine the parties' clear intent. *See Mercadante v. XE Servs., LLC*, 78 F. Supp. 3d 131, 138–39 (D.D.C. 2015); 11 S. Williston, *A Treatise on the Law of Contracts* § 30.25 (4th ed. 2020) ("When a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument."). Article 20.1 expressly incorporates the AAA Commercial Arbitration Rules, "a readily-identifiable set of 58 rules," as opposed to a "vague, general reference[] to AAA rules." *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 324 (W.D. Pa. 2020). As courts in this district have held, the wholesale incorporation of the AAA rules can itself constitute "clear and unmistakable evidence of an agreement to delegate questions of arbitrability to an arbitrator."[3] *Mercadante*, 78 F. Supp. 3d at 139 (collecting cases).

---

[3] Although state law governs the interpretation and formation of arbitration agreements, *see Haire*, 925 F. Supp. 2d at 131, federal courts have split on the question of whether the "clear and unmistakable" evidence standard presents a question of federal law or state contract law. *See Blanton*, 962 F.3d at 846–47 (collecting cases and summarizing arguments). The Court need not resolve this choice of law question because the parties agree that Virginia law governs the interpretation of the Agreement, *see* Def.'s Mot. for Summ. J. at 12; Pl.'s Opp'n at 10 n.5, and Virginia law dictates the same result as federal law, *see Kay Jennings Family Ltd. P'ship v. DAMN, LLC*, 71 Va. Cir. 348, 2006 WL 2578366, at *2–3 (Va. Cir. Ct. 2006) (permitting incorporation by reference of the AAA rules and holding that such incorporation constitutes clear and unmistakable evidence that the parties intended to submit the question of arbitrability to the arbitrator); *see also Blanton*, 962 F.3d at 847 (concluding that whether an agreement evinces "clear and unmistakable" intent is a question of federal law, but noting the outcome was the same under either federal or Washington state law).

If there were any doubt as to the parties' intent with regards to the delegation issue, they clarified it with express language in Article 20.1.  The sentence immediately following the AAA rules' incorporation provision provides: "The Arbitrator will decide *all procedural and substantive issues* relating to the Dispute, including without limitation those issues relating to the scheduling of, and rules and procedures applicable to, all hearings related to the Dispute."[4]  Dkt. 7-2 at 17 (emphasis added); *cf. Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002) (characterizing the question of whether a dispute is subject to merits arbitration as a question of substantive arbitrability).  KONE flips this provision on its head, arguing that it limits the AAA rules' application "to matters like how hearings will be run and how various arbitration deadlines might be set."  Pl. Opp'n at 11.  But the plain language of this provision makes clear that the arbitrator will decide *all* issues "relating to the Dispute."  Dkt. 7-2 at 17.  "The term 'including' shows that the [listed] issues . . . are meant to illustrate rather than exhaust" the arbitrator's jurisdiction.  *Blanton*, 962 F.3d at 848; *see also Rent-A-Center*, 561 U.S. at 67 (explaining that "arbitration is a matter of contract" and arbitration agreements must be enforced "according to their terms").  This broad language confirms that the parties manifested a clear and unmistakable intent to delegate arbitrability determinations to an arbitrator.

    2.    *The Carve-out Clause*

Article 20.1 contains a carve-out clause that exempts three types of disputes from arbitration, but this clause does not limit the scope of the arbitrator's authority to decide the question of arbitrability.  This too is evident from the plain language, as well as the structure of Article 20.1.

---

[4] As explained, *infra* at 10, paragraph one of Article 20.1 defines "Disputes" broadly to include "*any* dispute or controversy between the Parties arising under or in connection with this Agreement."  Dkt. 7-2 at 17 (emphasis added).

9

Article 20.1 applies the AAA rules to the arbitrator's review of the "Dispute," and it defines the term "Dispute" broadly to include "*any* dispute or controversy between the Parties arising under or in connection with this Agreement." Dkt. 7-2 at 17 (emphasis added). The three exemptions specified in the carve-out clause do not narrow the definition of "Dispute," as KONE claims. Pl.s' Opp'n at 9–10. Instead, the exemptions merely constitute a class of disputes and controversies that the parties did not agree to subject to merits arbitration. Indeed, Article 20.1 characterizes the carved out claims as "disputes or controversies arising in connection with third-party claims" or "any claim, action, suit or proceeding seeking specific enforcement." Dkt7-2 at 17. And it plainly states that the "pursuit of recovery of undisputed payments" is a controversy arising "under this Agreement." *Id.*

Though the delegation clause that incorporates the AAA rules also contains an exception—"[e]xcept as otherwise modified in this Article"—it is clear, based on the full text of Article 20.1, that this exception refers to modifications to the AAA rules, not the arbitrator's jurisdiction. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1077 (9th Cir. 2013) (holding that a clause incorporating UNCITRAL rules "as modified herein" referred to specific modifications of the rules, not the jurisdiction of the arbitrator); *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 & n.1 (9th Cir. 2012) (interpreting a similar clause preceding an incorporation clause—"[e]xcept as otherwise provided herein"—to refer to modifications of the incorporated J.A.M.S. rules). For example, Article 20.1 modifies AAA rules relating to the exchange of discovery, production of information, and time limits that apply to the parties' efforts to resolve the dispute.[5] *Compare* Dkt. 7-2 at 17–18 (setting strict numerical limits on

---

[5] And even if the parties' agreement did not modify the AAA rules, interpreting the clause— "[e]xcept as otherwise modified in this Article"—to refer to modifications of AAA rules, as

10

discovery requests and requiring the arbitrator to render a decision within ninety days "after the selection of the Arbitrator and the Arbitrator's receipt of the Defense Notice"), *with* AAA Rules 22, 45 (vesting authority and discretion in the arbitrator to "manage any necessary exchange of information" and requiring the arbitrator issue an award "no later than 30 calendar days from the date of closing the hearing"). None of these modifications address—let alone undermine—the parties' clear intent to adopt Rule 7's specific delegation provision. *See Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 170 (Va. 2011) ("[A] specific provision of a contract governs over one that is more general in nature.").

Moreover, the structure of Article 20.1 reinforces what the plain text dictates. The first paragraph, which includes the carve-out clause, addresses the scope of the arbitration agreement itself, while the fourth paragraph addresses the gateway decision of arbitrability and procedures of arbitration. *See* Dkt. 7-2 at 17. This structural separation suggests that the parties did not intend for both clauses to be limited by the same qualifying language. *Compare Arnold v. Homeaway, Inc.*, 890 F.3d 546, 549, 553 (5th Cir. 2018) (rejecting the plaintiff's argument that a carve-out provision in a separate arbitration clause limited the scope of a delegation clause), *with Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 280–82 (5th Cir. 2019), *cert. dismissed as improvidently granted*, 141 S. Ct. 656 (2021) (Mem.) (determining that a carve-out provision affected the scope of delegation where the same qualifying language applied to a combined arbitration and delegation clause).[6] "[T]o the extent . . . [the] arbitration agreement

---

opposed to jurisdictional limitations on the arbitration clause, would not render the clause meaningless. In that instance, the clause would guard against any future changes to the AAA rules that could affect the specific arbitration procedures the parties included in the Agreement. *See* Dkt. 7-2 at 17.

[6] The arbitration and delegation clause in *Henry Schein* read:

carves out certain claims from arbitration, it does so from the agreement in general, not from the [specific] provision that incorporates the AAA Rules." *Blanton*, 962 F.3d at 848.

To be sure, at least one circuit has concluded that "where a broad arbitration clause is subject to a qualifying provision that at least arguably covers the present dispute," the carve-out "delays application of the AAA rules until . . . arbitrability is decided," regardless of whether the carve-outs are placed within the delegation clause. *See NASDAQ QMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031–32 (2d Cir. 2014); *see also Armor All/STP Prods. Co. v. TSP Prods., Inc.*, 337 F. Supp. 3d 156, 165 (D. Conn. 2018). But other courts have rejected this approach, warning that it "conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability." *Oracle*, 724 F.3d at 1076; *see Blanton*, 962 F.3d at 847. And the D.C. Circuit has, at least implicitly, endorsed this reasoning. *See Chevron Corp.*, 795 F.3d at 207–08 (citing *Oracle* and holding the arbitrability

---

> Any dispute arising under or related to this Agreement (except for actions seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property of Pelton & Crane), shall be resolved by binding arbitration in accordance with the arbitration rules of the American Arbitration Association.

*Id.* at 280. By comparison, the arbitration and delegation clauses in Article 20.1 read:

> Except as otherwise expressly provided, the Parties agree that any dispute or controversy between the Parties arising under or in connection with this Agreement ("Dispute") will be settled exclusively in accordance with the procedures set forth in this Article.
>
> . . .
>
> Except as otherwise modified in this Article, the Arbitrator will review the Dispute in accordance with the Commercial Rules of the American Arbitration Association then in effect. The Arbitrator will decide all procedural and substantive issues relating to the Dispute. . . .

Dkt. 7-2 at 17.

determination was for the arbitrator even though the agreement carved out certain claims from arbitration).

Taken to its logical endpoint, conflating the issue of arbitrability with the scope of the arbitration agreement would ultimately render the AAA rules' delegation of arbitrability meaningless. *See Blanton*, 962 F.3d at 847. "[E]ffect should be given to every part of [a contract], . . . and no part thereof should be discarded as superfluous or meaningless." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 788 S.E.2d 237, 254 n.32 (Va. 2016) (internal quotation marks omitted). Further, because AAA Rule 7 expressly provides that the scope of the arbitration clause is itself subject to arbitration, it necessarily follows that the arbitrator's jurisdiction includes evaluating the arbitrability of claims that fall outside of its scope. *See Ciccio v. SmileDirectClub, LLC*, 19-cv-00845, 2019 WL 8298262, *3 (M.D. Tenn. Dec. 2, 2019). And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

In its supplemental brief, KONE argues for the first time that the phrase—"[t]his Article shall also not apply"—in the exemption for "undisputed payments due and owing" means that neither Article 20.1's procedures *nor the Article itself* applies to undisputed payments. *See* Pl.'s Suppl. Mem. at 1–2, Dkt. 12. But someone—either a court or an arbitrator—must decide whether a dispute is one for "undisputed payments due and owing," and thus, whether Article 20.1 applies is itself an arbitrability decision. *See AT&T Techs.*, 475 U.S. at 645–46, 651 (explaining that whether a specific arbitration article applies is itself a question of arbitrability).

KONE's narrow interpretation of Article 20.1's delegation provision would have far-reaching implications. Under KONE's theory, a party who agreed to delegate questions of arbitrability to an arbitrator could deprive the arbitrator of jurisdiction simply by raising *any*

13

argument about the scope of the arbitration provision in an opposition to a motion to compel arbitration. *See Ciccio*, 2019 WL 8298262, at *3. A court would then need to determine arbitrability before the arbitrator had an opportunity to do so. Not only would that undermine the parties' intent, such a "duplicative process would run counter to the policy of economy embodied in the Federal Arbitration Act and the more general principle that the rules governing who decides should be simple and clear." *Armor All*, 337 F. Supp. 3d at 166; *see also id.* (first citing *Direct Mktg Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) ("[J]urisdictional rules should be clear."), and then citing *Navarro Sav. Ass'n v. Lee*, 466 U.S. 458, 464 n.13 (1980) ("Jurisdiction should be as self-regulated as breathing; . . . litigation over whether the case is in the right court is essentially a waste of time and resources.")). This is especially true here, where the relevant carve-out provision is coterminous with the merits of the underlying dispute. That is, in order for the Court to determine whether it has the power to decide the question of arbitrability, it would necessarily have to decide the merits of the dispute—whether KONE is entitled to "undisputed payments due and owing." Yet "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *See AT&T Techs.*, 475 U.S. at 649.

      Finally, KONE's contention that it would not have delegated the decision of arbitrability to the arbitrator because the "arbitrator [is] likely to have (or [be] motivated to have) an over-expansive view of his or her jurisdiction" is beside the point. Pl. Opp'n at 12. Where there is a clear and unmistakable delegation, a court may not decide the threshold question of arbitrability, even when the argument that a dispute is subject to arbitration appears "wholly groundless." *See Henry Schein*, 139 S. Ct. at 529. And here, KONE had the benefit of a score of "judicial precedent . . . telling [it] that the incorporation of arbitral rules can provide 'clear and

14

unmistakable' evidence that that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 851. Parties "bargain in the shadow of the law," and in this instance, the Court sees no reason to deny two sophisticated parties "the benefit of their bargain." *See id.* at 850; *Grynberg v. BP P.L.C.*, 585 F. Supp. 2d 50, 55 (D.D.C. 2008) (finding clear and unmistakable evidence of intent to arbitrate arbitrability where "sophisticated parties" incorporated AAA rules).

In sum, whether a party is pursuing the "recovery of undisputed payments due and owing under this Agreement" is an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator. *See Oracle*, 724 F.3d at 1076. Thus, the Court will grant Chenega's motion to compel arbitration.[7]

### B. Stay or Dismissal

The Court will also deny Chenega's motion to dismiss this case for lack of jurisdiction, Def.'s Mot. for Summ. J. at 1, and stay this action pending arbitration. Dismissal of this action would be premature because "it remains plausible that the Court may yet be required to consider some or all of the claims in this action on the merits." *Mercadante*, 78 F. Supp. 3d at 147; *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). Chenega may "seek[] dismissal of this action if an arbitrator determines that all the issues in this case are, indeed, arbitrable." *See Mercadante*, 78 F. Supp. 3d at 147.

---

[7] Because the parties have delegated the question of arbitrability to the arbitrator, the Court need not address whether KONE's specific claims are covered by the exemption to the arbitration agreement. *See Wash.-Balt. Newspaper Guild, Local 35 v. Wash. Post*, 959 F.2d 288, 292 (D.C. Cir. 1992).

## CONCLUSION

For the foregoing reasons, Chenega's motion for summary judgment and to compel arbitration is granted and its motion to dismiss for lack of jurisdiction is denied. A separate order consistent with this decision accompanies this memorandum opinion.

March 3, 2021

_____
DABNEY L. FRIEDRICH
United States District Judge